The bill states that King and Montgomery were partners in trade, and purchased a lot; that King died and Montgomery sold the lot to the complainant, who gave bond to him for the purchase-money. That as Montgomery had a title but to half of the lot, the deed of conveyance which he had made vested a title only to half in the purchaser; that therefore the contract ought to be rescinded, and the bond delivered up to be cancelled and the deed of conveyance also. The defendant demurred. And now the question is, whether a surviving partner, by the laws of this State, can sell and dispose in fee of the real estate belonging to the partnership. And that brings into view the Act of 1784, c. 22, sec. 6, "provided always, that estates held in joint tenancy for the purpose of carrying on and promoting trade and commerce, or any other useful work or manufacture established and pursued with a view of profit to the parties therein concerned, shall be vested in the surviving partner or partners in order to enable him or them to settle and adjust the partnership business, and pay off the debts which may have been contracted in pursuit of the said joint business; but as soon as the same shall be effected, the survivor or survivors shall account with and pay and deliver to the heirs, executors, administrators, and assigns respectively, of the deceased partners, all such part, share, or sums of money as he or they may be entitled to by virtue of the original agreement, if any, or according to his or their share or part in the joint concern, in the same manner as partnership stock is usually settled between joint merchants or the representatives of their deceased partners." To arrive at a correct understanding of this paragraph, let us take *Page 95 
a view of the law as it stood in relation to partners, at and before the period of passing the Act of 1784; and, secondly, of the law as it now stands under the operation of this clause. First, of the law anterior to this act between living partners. Next, as between the executors of a deceased partner and the surviving partner. Each living partner could affect the whole personal property. He could accept bills and draw bills and make notes or assumpsits obligatory upon both, or deedspole and sales of personal property divesting out of both. The partnership could own real estate, their debts could be secured by mortgage, or they might be tenants by elegit, statute staple, or statute merchant. With relation to the real estate, it is believed that one could not pass the share of the other; it required the same ceremony to pass the estate in joint tenancy in the lands belonging to several partners, as it would if they were joint tenants without being partners; by livery and seisin, if the conveyance were at common law, and by deed executed in all instances, with registration in most instances, if the conveyance were not a common-law one. The estate of one could not be divested by the act of the other. The separate or private estate real of the one could not be affected by the act of the other. Hence the decision that a partner could not execute a bond or other deed which would be obligatory on the other. Heirs might be included in the bond, and if that were obligatory on the other, his heirs might be sued after his death, and his real estate affected. If he could execute one deed, by the same reason he could execute another. He might then alien or mortgage all the real estate of the partners; he might by deed affect the realty of the other partner held in severalty. This was inconsistent with the well established rule that one joint tenant could not be deprived of his estate held in joint tenancy but by his own act. Therefore the attempt was repelled as aiming at an object subversive of the rules of law. How *Page 96 
was it if one died? The partnership property survived, the real estate held in joint tenancy survived as in ordinary cases. That excluded the claim of the heir. The descent to him was broken and prevented; he could never claim it; it could never vest in him but by conveyance made to him by the survivor, which he had no right to claim. The survivor was to pay ail debts due from the firm, to ascertain the value of what remained; to ascertain also the share thereof that belonged to the deceased partner and to pay his share of it to his executors. The debts due from the partnership survived and rested upon him alone. On the death of his partner, the executors of the deceased could not be called on to pay them. He must of course have all the partnership effects to pay them with. He must have power to sell them, and how could he do so unless he had the property which he could convey to and vest in the purchaser? He must have it absolutely, and not upon condition to sell if needful for the payment of debts; for who could know, when he inclined to become a purchaser, whether such necessity existed or not; and what way would there be for him to know it? Must a purchaser take an account of all the partnership dealings, and ascertain exactly all the debts due, and the state of the funds in the hands of the survivor wherewith to make payment? Impossible! it could not be done. Then the survivor must have power to sell absolutely and unconditionally. He must of course have an absolute and unconditional property and dominion over all the estate belonging to the partnership which was capable of sale, including both lands and personal estate. He must have to him and his heirs a fee-simple estate. He was liable to account for the value of all to the executors of the deceased, and to pay to them the deceased's share of the balance appearing, after justly accounting for the full value of all. It was so absolutely his own that he might sue for a debt in jure proprio, not naming himself survivor. *Page 97 
1 Johns. Co. 406; Comb. 383; 2 Term Rep. 479. If sued, he might be sued in jure proprio. If plaintiff, his own private debt might be set off against the debt formerly belonging to the partnership, which he is now suing for. He is in the eye of the law, to all purposes, the true and absolute owner. The consequences of these original rules might be traced into their various branches and results; but it is useless to go further with any view to this case. Thus stood the law at and before the Act of 1784. What then is our law since that act? The same as before except in one single instance, operated by the word heirs used in the clause we are investigating. It must have a meaning assigned to it. Had it not been for the proviso, the enacting clause to which it is annexed would have destroyed the survivorship in the case of partners, and would have introduced all the mischiefs and confusion which that system is calculated to avoid. It was necessary to except this case out of the enacting clause; that was the main object of the proviso. But in making the exception, the legislature thought proper to save to the heirs-at-law such part of the value of the real estate vested in the survivor and his heirs which should remain unexhausted by the payment of debts, and which should be a part of the share of his testator; and therefore inserted the word "heirs" to give them a title to such moneys. This is not new or strange in law. Does not Coke say, if A. make a feoffment in fee to B. with condition to be void if B. pay to A. or his heirs such a sum, and then A. die, that the money will belong to his heirs? Littleton, 339. This is exactly agreeable to the general spirit of our laws, which, in case of creditors, secure to the heir the real estate by sacrifice of the personal, so long as it is in being. In the same spirit, the word "heirs" is here introduced to save the produce of the real estate for the heir, which, but for this word, would go to the executors of the deceased partner. Suppose, however, the wards "all such part, share, *Page 98 
and sums of money" refer to stock composed of lands and personalty as well as money, then only such parts of them as remain unsold and unexhausted by the payment of debts will be divisible and gopro rata to the representatives of the deceased; that is to say, the realty to the heirs, and the personalty to the executors. The property in the survivor remains till the partnership be settled, and all sales made in the meantime are valid. In like manner as an executor, who is vested with a property in all the personalty of his testator, can sell at his will and pleasure by virtue thereof, absolutely and unconditionally, whether the circumstances of his testator's estate call for it or not. The inevitable conclusion from these premises is, that the survivor can make a valid sale of the real estate which once belonged to the partnership, and that in the present case he bath conveyed a good title in fee to the whole lot in question to the complainant.
Demurrer allowed, and the bill dismissed.